**STATE OF MAINE**          **SUPERIOR COURT**
**CUMBERLAND,**             **PORTLAND**

| | |
|---|---|
| TERRY R. BAKER and ) | |
| SHANTEL L. BAKER as ) | |
| personal representatives of ) | |
| the estate of CHANCE D. BAKER, ) | NO. CV- 19-46 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| NICHOLAS GOODMAN, in his ) | |
| individual capacity; ) | |
| COASTAL PAWN SHOP; ) | |
| JOHN DOE, employee or manager ) | |
| of COASTAL PAWN SHOP; ) | |
| Defendants. ) | |

## COMPLAINT

1.      The Plaintiffs, Terry Baker and Shantel Baker, bring

this civil rights and wrongful death action against the Defendant,

Portland Police Sergeant Nicholas Goodman, under 42 U.S.C. §

1983, 5 M.R.S.A. § 4682, and 18-A M.R.S.A. § 2-804, for the

unlawful use of excessive and deadly force against Chance D.

Baker on February 18, 2017 in Portland, Maine in violation of the

Fourth Amendment of the United States Constitution, and Article

REC'D CUMB CLERKS O
FEB 18 '19 ᴧₘ 2:52

Wall Affidavit Exhibit 3

One Section 5 of the Maine Constitution, which caused conscious pain and suffering, and, ultimately, the death of Chance D. Baker; the Plaintiffs bring this action against Coastal Pawn Shop and its employee or manager "John Doe" under the State of Maine common law of negligence because on the above date Coastal Pawn Shop and John Doe were negligent in selling Mr. Baker an air rifle while he was noticeably intoxicated and suffering from a mental health break down.

I.     **PARTIES**

2.     Terry Baker is the maternal grandmother of Chance D. Baker, and personal representative of the estate of Chance D. Baker, and the rightful heir of Chance D. Baker.

3.     Shantel L. Baker is the mother of Chance D. Baker, and personal representative of the estate of Chance D. Baker, and the rightful heir of Chance D. Baker.

4.     At all times relevant to this Complaint, Chance D. Baker was 22 years old, and a resident of Portland, Maine.

Wall Affidavit Exhibit 3

5.      Nicholas Goodman was, at all times relevant to this Complaint, a Sergeant with the Portland Police Department, and acting under the color of law as a police officer for the City of Portland; Mr. Goodman is being sued in his individual capacity.

6.      At all times relevant to this Complaint, Coastal pawn Shop was a duly licensed business in Portland, Maine.

7.      At all relevant to this Complaint. "John Doe" was an employee working for Coastal Pawn Shop and acting in his capacity as an employee or manager of Coastal Pawn Shop; the identification of "John Doe" is unknown to the Plaintiffs at this time, but anticipated discovery will reveal the identification of this employee.

II.      STATEMENT OF FACTS

8.      On February 18, 2017, Chance Baker (hereafter "Chance") was suffering from mental health issues.

9.      On this same date, Chance was drinking alcohol.

3

Wall Affidavit Exhibit 3

10.     At approximately 11:00 a.m. on February 18, 2017, Chance walks to Union Station Plaza in Portland, Maine.

11.     Union Station Plaza is located at the intersections of Congress Street and St. John Street in Portland, and is a moderate size strip mall.

12.     Union Station Plaza is know to the Portland Police Department, including Sergeant Goodman, to be frequented with a high level of homeless population, and persons with mental illness.

13.     Chance goes into Coastal Pawn and Trading, a pawn shop in Union Station Plaza.

14.     It is apparent to the employees inside Coastal Pawn and Trading that Chance is intoxicated based on his movants, the odor of intoxicants, and his speech.

15.     Chance purchases an air riffle BB gun from Coastal Pawn and Trading.

16.     An air rifle BB gun is a non-lethal weapon.

4

Wall Affidavit Exhibit 3

17.    The air rifle BB is smaller than an actual firearm, and made with a distinct wood stock.

18.    A reasonable police officer can tell the difference between an air rifle BB and actual firearm.

19.    After purchasing the BB gun, Chance walks out of Coastal Pawn and Trading into Union Station Plaza.

20.    Chance is unsteady on his feet.

21.    Chance falls onto the sidewalk onto his back.

22.    Several people became concerned with Chance's condition, and him holding the BB gun, and call 911.

23.    At approximately 11:11 a.m. 911 dispatch receives several calls from concerned citizens and relays the substance of those calls set forth below to the Portland Police Department, and Sergeant Goodman

24.    Sergeant Goodman is at the Portland Police Department on duty as a police officer when he receives information from 911 dispatch regarding Chance.

25.     Sergeant Goodman receives information the suspect (Chance) may have be armed with an air rifle or .22 rifle.

26.     Sergeant Goodman receives information the suspect (Chance) is intoxicated.

27.     Sergeant Goodman receives information the suspect (Chance) is yelling obscenities on the street.

28.     Sergeant Goodman receives information that one of the 911 callers indicates the suspect is holding a BB gun.

29.     Sergeant Goodman responds to the information about the BB gun by stating "we're not going to start guessing now."

30.     Sergeant Goodman arrives in the Union Station Plaza.

31.     Several other Portland Police officers arrive in the Union Station Plaza area at approximately the same time as Sergeant Goodman

Wall Affidavit Exhibit 3

32.    Officer Andrew Knutson of the Portland Police Department is one of the officers that arrived with Sergeant Goodman.

33.    The officers arrived and formed a perimeter around Chance.

34.    It was apparent to the arriving police officers, including Sergeant Goodman, that Chance is suffering from mental illness based on his behavior and responses.

35.    Sergeant Goodman is aware Chance was yelling obscenities on the public street.

36.    Sergeant Goodman is aware and can see Chance pacing back and forth in the parking lot at Union Station Plaza.

37.    Sergeant Goodman is aware, and can observe, that Chance is intoxicated at the time he arrived on the scene.

38.    Sergeant Goodman is told, and/or could see, Chance is having trouble walking, and keeping his balance, and is swaying and unsteady on his feet.

Wall Affidavit Exhibit 3

39.     From the time Sergeant Goodman arrives, until he deploys deadly force, Chance is pacing and remains in the general area of a Subway restaurant located in Union Station Plaza.

40.     Sergeant Goodman arrives at Union Station Plaza at approximately 11:17 a.m.

41.     Sergeant Goodman parks his police cruiser and exits it.

42.     Sergeant Goodman is armed with a .223 Remington caliber police carbine.

43.     Officer Knutson is armed with the same weapon as Sergeant Goodman.

44.     Sergeant Goodman and Officer Knutson take up a position together behind a pickup truck approximately 105 feet from Chance.

45.     Sergeant Goodman yells commands to Chance to drop his weapon.

46.     Chance does not react to these commands.

47.     Sergeant Goodman cannot tell if Chance can hear the commands.

48.     Officer Knutson tells Sergeant Goodman that the suspect (Chance) is "Adam Ruffino."

49.     Sergeant Goodman begins giving commands to Chance, by calling him "Adam".

50.     Sergeant Goodman yells, "Adam, drop the gun."

51.     Sergeant Goodman can see Chance is having difficulty comprehending his commands.

52.     The .223 Remington caliber police carbine Sergeant Goodman is armed with is equipped with a magnifying scope.

53.     It is apparent to Sergeant Goodman, or should have been, that viewing Chance through the magnifying scope that Chance is armed with a non-lethal BB gun.

54.     Sergeant Goodman is aware that at least one other person has described the weapon as a BB gun to the 911 dispatcher.

9

Wall Affidavit Exhibit 3

55.    Officer Knutson sees Chance pumping the gun like a BB gun.

56.    Officer Knutson broadcast over the radio that Chance is "pumping it like a BB gun…"

57.    Sergeant Goodman hears the above statement from Officer Knutson.

58.    Officer Knutson is positioned next to Sergeant Goodman.

59.    At one point after Sergeant Goodman arrives, Chance places the BB gun down on the ground near the Subway restaurant.

60.    Chance then takes a drink from a bottle of beer he has inside his coat.

61.    Sergeant Goodman yells for Chance not to pick the gun back up.

62.    Chance does not react to Sergeant Goodman's command or voice.

Wall Affidavit Exhibit 3

63.    Sergeant Goodman cannot tell whether Chance can hear the commands.

64.    After drinking from the beer bottle, Chance picks the BB gun back up.

65.    Chance is in a crouched position, holding the BB gun parallel to the ground below his knees.

66.    Sergeant Goodman fires a single shot from his weapon at Chance.

67.    The shot strikes Chance in the head.

68.    Sergeant Goodman fires the shot at approximately 11:19 a.m.

69.    Sergeant Goodman arrived less than 3 minutes before choosing to shoot Chance.

70.    Sergeant Goodman knew, or reasonable should have known, Chance was holding a BB gun at the time deadly force was used.

11

Wall Affidavit Exhibit 3

71.     Sergeant Goodman never sees Chance aim or point the BB gun in the direction of himself, or any of the other officers on scene, or any civilians.

72.     Sergeant Goodman is unaware of Chance committing any crime before he arrived on the scene.

73.     Chance was aware he had been shot.

74.     Chance suffered physical and emotional pain after being shot.

75.     There were several Portland Police Officers on the scene at the time Sergeant Goodman used deadly force against Chance.

76.     None of the other police officers on the scene were preparing to use deadly force against Chance at the time Sergeant Goodman chose to use deadly force.

77.     The officers on scene approach Chance and handcuffed him while he was bleeding from the gunshot wound.

78.     Chance is taken to the hospital and later pronounced dead from the gunshot wound.

### III.   CLAIMS FOR RELIEF

*Count One*

**Excessive Force, Pursuant to 42 U.S.C. § 1983, Fourth Amendment of United States Constitution as to Defendant Goodman.**

79.   The Plaintiffs incorporate all previously alleged paragraphs as if alleged herein.

80.   The Sergeant Goodman violated Chance Baker's right under the Fourth Amendment of the United States Constitution to be free from the use of excessive and unreasonable force.

81.   Sergeant Goodman shot and killed Chance Baker without legal cause or excuse.

82.   Sergeant Goodman knew, or reasonably should have known, Chance Baker was not an imminent threat to himself or any other police officer, or person, present at the scene at the time Sergeant Goodman chose to shoot and kill Mr. Baker.

83.   As a result of Sergeant Goodman shooting Mr. Baker, he suffered the following damages:

13

(a) Violation of his rights under the Fourth Amendment of the United States Constitution to be free from the use of unreasonable and excessive force.

(b) Loss of his life.

(c) Physical pain and suffering and emotional trauma and suffering.

(d) Conscious pain and suffering and fear.

(e) Medical and funeral expenses.

(f) Loss of future earnings and wages.

### Count Two
**Excessive Force, Pursuant to 5. M.R.S. § 4682 and Article 1 § 5 of the State of Maine Constitution as to Defendant Goodman.**

84.    The Plaintiffs incorporate all previously alleged paragraphs as if alleged herein.

85.    Sergeant Goodman violated Chance Baker's right under the Article 1 § 5 of the State of Maine Constitution to be free from the use of excessive and unreasonable force.

14

86.     As a result of the above violation Mr. Baker suffered the damages set forth in Paragraph #83 above.

## Count Three
### Wrongful Death, Pursuant to 18-A M.R.S.A. § 2-804 as to Defendant Goodman.

87.     The Plaintiffs incorporate all previously alleged paragraphs as if alleged herein.

88.     The Plaintiff's provided Notice Under Maine Tort Claims Act 14 M.R.S.A. § 8107 to the named Defendant on July 27, 2017 of the wrongful death claims set forth below.

89.     Sergeant Goodman's violation of Mr. Baker's rights under federal and state constitutional law as set forth in the previous paragraphs directly caused his death.

90.     As a result of Mr. Baker's death, the Plaintiffs seek damages as set forth and provided under Maine's Wrongful Death Statute, 18-A M.R.S.A. § 2-804(b).

Wall Affidavit Exhibit 3

*Count Four*

**Wrongful Death – Conscious Pain and Suffering  Pursuant to 18-A M.R.S.A. § 2-804 as to Defendant Goodman.**

91.     The Plaintiffs incorporate all previously alleged paragraphs as if alleged herein.

92.     Chance Baker suffered a period of conscious pain and suffering after being shot by Sergeant Goodman, and before his death.

93.     The Plaintiffs seek damages as set forth and provided under Maine's Wrongful Death Statute, 18-A M.R.S.A. § 2-804(c).

*Count Five*

**Negligence Against Coast Pawn Shop and "John Doe"**

94.     The Plaintiffs incorporate all previously alleged paragraphs as if alleged herein.

95.     On February 18, 2017, Coastal Pawn Shop, through its employee, "John Doe", sold Mr. Baker an air rifle pellet gun, at its store in Union Plaza in Portland, Maine.

96.    At the time Coastal Pawn Shop and John Doe sold Mr. Baker the air riffle pellet gun, Mr. Baker was noticeably intoxicated and suffering from a mental health breakdown.

97.    At the time Coastal Pawn Shop and John Doe sold Mr. Baker the air riffle pellet gun, Mr. Baker was acting and communicating in an incoherent manner, unsteady on his feet, and smelled of intoxicants

98.    Another person inside Coastal Pawn Shop at the time told John Doe, and other employees or management, that Mr. Baker was not in a good mental state and they should not sell the air rifle to Mr. Baker.

99.    Coastal Pawn Shop and John Doe sold Mr. Baker the air rifle pellet gun at approximately 11:01 a.m. on February 18, 2017.

100.    At the time, Coastal Pawn Shop and "Joh Doe" sold Mr. Baker the air rifle it was known or reasonably foreseeable that Mr. Baker would be at reasonable risk of harming himself or being harmed based on his intoxicated or mental health state at the time.

101.   Coastal Pawn Shop and John Doe made no effort from preventing Mr. Baker from leaving the store with the air rifle.

102.   Coastal Pawn Shop and John Doe made no effort and provided no safety tips to Mr. Baker regarding proper use and display of the air rifle in a public place, despite knowing he was walking out of the store into Union Plaza which is a busy public place.

103.   Soon after Mr. Baker left Coastal Pawn Shop, John Doe became aware of a police presence in the Union Street Plaza area.

104.   John Doe knew, or should have known, the police presence was in response to Mr. Baker holding the air rifle he had purchased from Coastal Pawn Shop in the Union Plaza area.

105.   John Doe and Coastal Pawn Shop never took any steps to contact the Portland Police Department or any law enforcement agency to inform them that Mr. Baker had purchased an air rifle from Coastal Pawn Shop and was not armed with a real firearm.

106.    Coastal Pawn Shop and John Doe had sufficient time and ability to contact law enforcement to inform them Mr. Baker was not armed with a real firearm, but never did.

107.    At all time relevant to this Count and the Complaint, John Doe and all other employees of Coastal Pawn Shop present at the time Mr. Baker bought the air rifle were acting in their capacity as employees of Coastal Pawn Shop and Coastal Pawn Shop is liable under the theory of respondeat superior.

108.    As a direct and foreseeable result of the actions and omissions of Coastal Pawn Shop, John Doe, and its employees, Mr. Baker was shot by the Portland Police Department and died.

### Count Six
### Wrongful Death, Pursuant to 18-A M.R.S.A. § 2-804 as to Defendants Coastal Pawn Shop and John Doe

109.    The Plaintiffs incorporate all previously alleged paragraphs as if alleged herein.

110.    Coastal Pawn Shop and John Doe's negligent actions set forth in the previous Count directly caused Mr. Baker's death.

111.    As a result of Mr. Baker's death, the Plaintiffs seek damages as set forth and provided under Maine's Wrongful Death Statute, 18-A M.R.S.A. § 2-804(b).

### Count Seven
### Wrongful Death – Conscious Pain and Suffering  Pursuant to 18-A M.R.S.A. § 2-804 as to Defendants Coastal Pawn Shop and John Doe.

112.    The Plaintiffs incorporate all previously alleged paragraphs as if alleged herein.

113.    Chance Baker suffered a period of conscious pain and suffering after being shot by Sergeant Goodman, and before his death.

114.    Coastal Pawn Shop and John Doe's negligent actions set forth in the previous Count directly caused Mr. Baker's conscious pain and suffering.

115.    The Plaintiffs seek damages as set forth and provided under Maine's Wrongful Death Statute, 18-A M.R.S.A. § 2-804(c).

Wall Affidavit Exhibit 3

## V.   REQUEST FOR RELIEF

116.   As a result of the above claims for relief, the Plaintiff

requests the following relief:

      i. Compensatory damages;

      ii.Punitive damages;

      iii.Attorney fees and cost pursuant to 42 U.S.C. §

1988, and 5 M.R.S. § 4683;

      iv. damages as provided for under 18-A M.R.S.A. §

2-804;

      v. and all other monetary and equitable relief the

Court finds appropriate.

**Wall Affidavit Exhibit 3**

Dated: February 11, 2019

The Plaintiff,

Hunter J. Tzovarras
Bar No. 004429
Attorney for Plaintiffs
32 Central Street
P.O.Box 2806
Bangor, Maine 04402
(207) 558-2450
hunter@bangorlegal.com